UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LIPSEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> REDDY, et al., <br><br> Defendants. | No. 2:17-cv-1434-EFB P <br><br> <u>ORDER AND FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He now proceeds with his fourth amended complaint (ECF No. 23) which the court must screen.

<u>Screening Requirements</u>

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

1

meritless legal theories or whose factual contentions are clearly baseless." *Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (citation and internal quotations omitted), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Neitzke*, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *Id.*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (citations omitted). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

### Screening Order

Plaintiff alleges that, in September of 2016 and while incarcerated at the California Medical Facility in Vacaville, he made repeated requests to the medical treatment team for his

legal files. ECF No. 23 at 3. When the files were never provided, plaintiff used paper to obstruct the windows of his cell in protest. *Id.* In response, Defendants Ortiz and Smith – both Medical Technician Assistants ("MTAs") - physically removed plaintiff from his cell and escorted him to the unit day room. *Id.* There, defendant Reddy – a physician – interrogated plaintiff as to why he had covered his cell windows. *Id.* He explained his reasoning while Ortiz and Smith allegedly urged Reddy to administer medication via injection. *Id.*

Reddy ultimately decided to administer shots, and plaintiff states he received "3-4 shots of a mixture of med[ications]." *Id.* at 4. Plaintiff alleges that he suffered an adverse reaction from this medication – feeling "extremely hot," "hallucinative," and experiencing difficulty breathing. *Id.* at 3-4. He felt "groggy and sore" for the next three days. *Id.* at 3. Plaintiff alleges that, after this incident, he spoke to an unnamed psychiatrist who speculated that the negative reaction was either due to plaintiff's having an allergy to the medications or administration of an excessive dosage. *Id.* at 4. Based on the foregoing, plaintiff brings a claim for involuntary medication and deliberate indifference against Ortiz, Smith, and Reddy. *Id.*

Plaintiff alleges that similar events repeated themselves later in September of 2016. *Id.* He again requested legal documents and, when he did not receive them, used the meals he was served to obscure his windows. *Id.* The medication was administered by injection again.[1] *Id.* Plaintiff states that, after this injection, he was left tied to the restraining chair for approximately seven hours. *Id.* at 4-5. During that period, he allegedly asked Ortiz, Smith, and a non-party nurse whether he could be released back to his cell, and each denied the request. *Id.*

After careful consideration, the court concludes that plaintiff's complaint still fails to state a cognizable claim. As the court explained in its previous screening order, the imposition of unwanted treatment does not violate due process if it is "reasonably related to legitimate penological interests." *Washington v. Harper*, 494 U.S. 210, 221, 223 (1990). Here, the injections were administered after plaintiff purposefully (and undisputedly) frustrated welfare checks. And although plaintiff alleges that staff could have simply removed him from his cell,

---

[1] Plaintiff states that "they" performed the injection, but does not specify whom. The only logical interpretation of "they" is as a reference to Ortiz, Smith, and Reddy.

3

taken down the obscuring material, and returned him thereto (ECF No. 23 at 5), that alone does not establish that the shots were not related to legitimate penological interests. Courts have long recognized that the administration of a prison is complex and difficult. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). An inmate's claim that a problem could have been solved in one way, even taken as true, does not necessarily mean that alternative or additional actions taken by prison officials served no penological utility. Moreover, while a plaintiff's factual allegations are generally to be accepted as true at the screening stage, a court need not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiff's claim that prison officials categorically need have gone no further than taking down his obstructions and placing him back in his cell is such an "unwarranted deduction." Finally, in its previous screening order, the court advised plaintiff that, in order to evaluate whether a penological purpose underlay the administration of medication, he should allege what medical condition necessitated his subjection to welfare checks and how the injected drugs relate to that condition. ECF No. 22 at 4. He has failed to offer any clarifying allegations on these points.[2]

The court recognizes that plaintiff alleges that another, unnamed physician told him the injections contained medication he was allergic to and/or a dosage that was too high. Setting aside the lack of factual context (i.e. who this physician was, whether he or she was speaking definitively and based on concrete knowledge or merely speculating) and accepting these claims as true, plaintiff has failed to allege that any of the defendants knew or should have known about

---

[2] Some underlying facts can be ferreted out of plaintiff's complaint. He notes, for instance, that at a state hearing, Dr. Reddy indicated that the shots were necessary because she believed plaintiff presented a risk of self-harm. ECF No. 23 at 10. The complaint offers no substantive allegations which call into question the legitimacy of Reddy's belief. That is, plaintiff alleges that the shots were not required, that he was not such a risk, but he offers no indication that Reddy *knew* that he was not a risk of harm to himself when she ordered the injections.

4

either condition at the time of the injections.[3] Deliberate indifference requires such a showing. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that an official cannot be liable for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Plaintiff has also brought new claims against defendants Scott Kernan and the City of Vacaville. With respect to the latter, it is entirely unclear how Vacaville is in any way involved in the claims at bar. With respect to defendant Kernan, plaintiff seeks to hold him responsible for promulgation of a CDCR policy – California Code of Regulations § 3364.1 – which purportedly allows the use of involuntary medication as a form of discipline. ECF No. 23 at 8. The provision plaintiff appears to cite to does not support this claim. It states:

> Involuntary Medication means the administration of any psychiatric medication or drug to an inmate *by the use of force, discipline, or restraint*, including administration upon an inmate who lacks capacity to accept or refuse medication. Involuntary psychiatric medications may be utilized after less restrictive non-pharmaceutical alternatives have been deemed unavailable or clinically inappropriate, or in a medical emergency. If psychiatric medication is administered during an emergency, the medication shall only be that which is required to treat the emergency condition and shall be administered for only so long as the emergency exists.

Cal. Code Reg. tit. 15, § 3364.1(a)(8) (emphasis added). The definition provides that medication may be administered *by use* of discipline, not as a *form of* discipline.

In closing, the court does find plaintiff's allegation that he was left restrained for seven hours – during which time he was denied a bathroom visit and urinated on himself – troubling. Nevertheless, plaintiff does not offer a clear allegation that any named defendant was directly

---

[3] The court recognizes that plaintiff was given the injection twice and, after the first injection, suffered various negative, but temporary, effects. The mere fact that he suffered these effects is insufficient to establish that defendants knew or should have known that giving him a second injection was "an excessive risk" to his health or safety. First, numerous legitimate treatments are accompanied by negative side effects. Second, plaintiff does not allege that defendants ever had specific awareness of the side effects. Third, and with respect to defendants Ortiz and Smith, plaintiff does not allege why either non-physician had reason or expertise to recognize whether either why the shots were (or were not) medically appropriate or whether he was responding appropriately them.

responsible for this occurrence. He does claim, that at some point after the injection and while he was still restrained, he asked Smith and Ortiz to release him and both declined, stating that they were busy and would return when plaintiff could be released.[4] ECF No. 23 at 5. Plaintiff does not allege how much time had elapsed at that point – whether half an hour or four hours. The only temporal certainty is that plaintiff's request to both defendants came before the fifth hour of being restrained when he asked an unnamed, non-party nurse whether he could use the bathroom. *Id.* The nurse allegedly refused this request and explained her understanding that he would be released "soon." *Id.* On these facts, the court cannot conclude that either Ortiz and Smith acted with deliberate indifference in failing to release plaintiff upon request.

Given that plaintiff has failed to state a cognizable federal claim, the court declines to exercise pendent jurisdiction over any remaining state claim.

## Leave to Amend

The only remaining question is whether to grant plaintiff further leave to amend his complaint. This is his fourth amended complaint and repeated failure to state a cognizable claim counsels against further opportunities amend. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809-810 (9th Cir. 1988) ("Repeated failure to cure deficiencies by amendments previously allowed is another valid reason for a district court to deny a party leave to amend."). Thus, the court will recommend this action be dismissed without further leave to amend.

## Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a United States District Judge to this case.

Further, it is HEREBY RECOMMENDED that plaintiff's fourth amended complaint (ECF No. 23) be DISMISSED without leave to amend for failure to state a claim upon which relief can be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days

---

[4] The complaint does not make clear whether either Ortiz or Smith had the authority to order his release or whether that lay with his medical provider.

6

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 18, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE